IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA LEMONS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 21-1737 |
| | : | |
| GAREN MEGUERIAN, ESQ. and STE- | : | |
| FAN P. KRUSZEWSKI, M.D. | | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                        **April 29, 2022**

Plaintiff Christina Lemons brings this action against Defendants Garen Meguerian, Esq. and Dr. Stefan P. Kruszewski, M.D., alleging breach of contract and fraud in retaliation for her participation in a whistleblower qui tam lawsuit. Lemons claims Defendants (1) fraudulently induced her to file her own qui tam action by promising she would be well compensated for doing so, (2) fraudulently concealed the material existence of the other realtors and their lawsuits, and (3) negligently misrepresented material facts about the qui tam actions. She also claims Meguerian breached a fiduciary duty owed to her. Lemons also claims Kruszewski breached an unwritten contract and was unjustly enriched. Defendants now move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motions with leave to amend because Lemons has failed to plead sufficient facts to state a claim for relief which is plausible on its face.

1

**FACTS**[1]

On January 25, 2010, Kruszewski filed a federal False Claims Act action against Reckitt Benckiser Pharmaceuticals, Inc. ("RB") in the District of New Jersey and the case was sealed shortly thereafter. Compl., ¶¶ 20-21. Kruszewski was the first relator to file. Compl., ¶¶ 22-24. Meguerian was representing Kruszewski in other litigation matters but was aware of Kruszewski's participation in the RB case and was also involved in drafting Kruszewski's complaint. Compl., ¶¶ 25-29. On October 15, 2012, Dr. Stuart Finkelstein filed the second qui tam action against RB and, on May 3, 2013, Ann Williams filed the third. Compl., ¶¶ 32-37. Both of these cases were sealed. *Id.*

On December 3, 2013, Gail Scott filed a fourth qui tam action against RB, which was also sealed. Compl., ¶¶ 38-39. That same day, while Lemons was still an RB employee, federal law enforcement authorities conducted a raid of RB's offices in Midlothian, Virginia. Compl., ¶¶ 40-41.

At that time, Lemons was still employed by RB, where she had worked since July 2012. Compl., ¶¶ 40-44. While working at RB, Lemons claims she "complained to company personnel about improper off-label marketing practices relating to Suboxone," which she argues "further constituted protected whistleblower activity." Compl., ¶ 67. In late 2013, Lemons sat next to Susan Guerette, Garen Meguerian's wife, on a flight from Arizona to Philadelphia, and they spoke extensively about the harassment Lemons was facing at work. Compl., ¶¶ 67-71. Guerette told

---

[1] When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court is required "to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). The Court therefore describes the following facts as they are alleged in the Complaint.

Lemons she knew an employment lawyer (Meguerian) who could help, and the two women ex-
changed contact information. Compl., ¶¶ 71-75. Lemons later reached out to Guerette, who set
up a conference call. Compl., ¶¶ 76-78. On January 24, 2014, Meguerian sent Lemons an email
asserting attorney-client privilege, and Lemons concluded from that email that they had an attor-
ney-client relationship.   Compl., ¶¶ 79-82. Lemons told Meguerian about both her harassment
complaints and her concerns about RB's marketing practices. Compl., ¶¶ 81-83. Meguerian pro-
vided Lemons with advice about her employment and illegal marketing allegations against RB
and said that pursuing the whistleblower claims would be "more lucrative." Compl., ¶ 83.

        Turning back to the raid of RB's offices, Lemons had reason to believe the authorities had
failed to find a certain computer server that contained material evidence. Compl., ¶ 61. In No-
vember 2014, Lemons made copies of a population of documents on this server. Compl.,
¶¶ 48-65, 84-87. The documents discussed RB's "Project Frost," which had sought to destroy the
generic competition for several of its products. *Id.* She resigned from the company shortly there-
after and Meguerian helped her draft her constructive discharge forms and obtain employment
counsel in Arizona, where Lemons lived. Compl., ¶¶ 44; 86-87. Meguerian recommended Attor-
ney Eliot Isaac for her employment claims against RB. Compl., ¶ 88. Lemons retained Attorney
Isaac, but Meguerian continued to provide other legal advice to Lemons. Compl., ¶ 89.

        On December 16, 2014, Meguerian approached Lemons about officially filing the
whistleblower lawsuit, and Lemons then shared with him photographs and other evidence sup-
porting her claims. Compl., ¶¶ 91-93. Three days later, during an EEOC mediation for her em-
ployment claims, Lemons found out RB knew she had taken confidential company documents
and was threatening to take legal action in response. Compl., ¶ 93. Lemons contacted Meguerian

about the threats, and Meguerian recommended she proceed with filing the lawsuit. Compl., ¶¶ 94-95. Meguerian emphasized again that he was representing Kruszewski in a similar lawsuit and could not represent her, but he did offer to help her to find a lawyer and provide the documents to the Government. Compl., ¶¶ 95-99. Meguerian recommended Attorney John Leader. Compl., ¶¶ 100-103. Meguerian also told Kruszewski about the documents Lemons had in her possession.  Compl., ¶¶ 101, 106. On or about December 20, 2014, Kruszewski called Leader— for whom Kruszewski had served as an expert in an earlier lawsuit—and told Leader he had a pending qui tam action against RB Pharmaceuticals but the investigation had stalled for lack of evidence. Compl., ¶ 101. Kruszewksi also told Leader there was a former employee who wished to file a related qui tam claim and this individual may have had new information that would revive the investigation. Compl., ¶ 101, 106-107.

Lemons met with Leader on December 23, 2014. Compl., ¶ 109.  The next day, Lemons filed her False Claims Act action in the District of Arizona. Compl., ¶ 45. It was sealed shortly thereafter. Compl., ¶ 46. Lemons' information jump-started the pending whistleblower investigations. Compl., ¶¶ 60, 114-120. Two additional relators, Miller and Greene, filed after Lemons. Compl., ¶ 47.

Lemons meanwhile stayed in contact with Meguerian, who "assured [her] on multiple occasions that she would receive substantial compensation through the [her] action." Compl., ¶ 104.  Lemons asked for, and Meguerian provided, assistance with other matters, including (1) reviewing and providing language for a severance letter she planned to send to Precision Diagnostics, (2) reviewing the engagement agreement for Attorney Leader's co-counsel (Rabon) in Lemons' qui tam case, (3) obtaining local counsel for her EEOC proceedings against RB Phar-

maceuticals, and (4) assessing the merits of her discrimination/retaliation complaint against RB Pharmaceuticals. Compl., ¶¶ 121-129.

In May 2017, the Government decided to allow contact between relators, and Lemons contacted Meguerian. Compl., ¶ 130. Meguerian told Lemons that Kruszewski's legal team was worried the Government might resolve the case through criminal proceedings only, and Lemons' counsel then spoke to Meguerian about this issue. Compl., ¶ 131-132. In August 2017, Leader told Kruszewski's counsel (Attorney Kenney) about Kruszewski's recruitment of Lemons and how Kruszewski had encouraged Attorney Leader to take the case. Compl., ¶¶ 133-135. Kenney had not heard this before but recommended Leader and Attorney Rabon (Lemons' counsel) write a letter to the other relators' counsel explaining why Lemons should be part of a relators' sharing agreement. Compl., ¶¶ 135-138; 140. Lemons also agreed, at Kenney and Kruszewski's request, to not disclose Kruszewski and Megeuerian's role in her recruitment and any early contact Kruszewski had with Leader. Compl., ¶¶ 139-140. Lemons' counsel sent a letter to the other relators on September 9, 2017, but no one responded. Compl., ¶¶ 140-141. In May 2018, Lemons' and Kruszewski's attorneys discussed entering into a sharing agreement, but no official agreement was offered or accepted. Compl., ¶ 142.

On July 11, 2019, a non-prosecution agreement allocated $700 million dollars to the False Claims Act claims (excluding the claims against Indivior). Compl., ¶ 144. The relators' share was more than $100 million dollars, and Kruszewski's share exceeded $40 million dollars. Compl., ¶¶ 145-146. Lemons sought to negotiate with Kruszeski and the other relators for a portion of the relators' share, and Kruszewski's counsel "pressured" Lemons' counsel to negotiate with the larger group of relators, instead of dealing solely with Kruszewski. Compl., ¶ 149.

Lemons also believed that Kruszewski, Williams, and Scott, all of whom filed cases before Lemons, had already reached a sharing agreement amongst themselves.  Compl., ¶ 147. Lemons negotiated only a small fraction of the total Relators' share, despite having provided valuable information and kept Kruszewski's recruitment and violation of the seal order confidential. Compl., ¶¶ 150-160. Kruszewski's counsel stated Kruszewski owed Lemons additional monies, and Lemons entered into the Share Agreement based on Kruszewski's statement. Compl., ¶ 150.

**DISCUSSION**

The Court will grant Defendants' Rule 12(b)(6) motions and grant Lemons leave to amend. Lemons has failed to plead sufficient facts to state a claim for relief which is plausible on its face.

"A federal court sitting in diversity applies the choice of law rules of the forum state," which is Pennsylvania in this case. *Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012); *see also Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 467, 496 (1941). Generally speaking, "Pennsylvania applies a 'flexible rule which permits analysis of the policies and interests underlying the particular issue before the court and directs courts to apply the law of the state with the most interest in the problem." *Teva Pharm. Indus., Ltd. v. United Healthcare Servs., Inc.*, 341 F. Supp. 3d 475, 503 (E.D. Pa. 2018) (quotations omitted).

However, performing a choice of law analysis is only necessary if there is a true conflict between the jurisdictions concerning the applicable law. *See Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F. Supp. 2d 677, 696 (W.D. Pa. 2013). Here, there is no true conflict. With respect to the statute of limitation, whether the applicable limit is Pennsylvania's two-year period for fraud-based claims or Arizona's three-year period does not impact the Court's analysis of the

relative timeliness of Lemons' claims. Secondarily, and as the parties agree, the elements of a fraud-based claim in Arizona and Pennsylvania are similar enough that that the substantive law is not in conflict. For the sake of brevity, the Court will use citations to Pennsylvania law.

An affirmative defense based on the statute of limitations typically must be plead in an answer, not a Rule 12 motion. *See* Fed. R. Civ. P. 8(c)(1). However, if on the face of the complaint the Plaintiff has not brought a claim within the applicable statute of limitations period, the Defendant may raise such a defense in a motion to dismiss. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). Of course, "[I]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Bethel v. Jendoco Constr. Corp.,* 570 F.2d 1168, 1174 (3d Cir. 1978). Here, the facts of the Complaint, when taken as true, could reasonably support Lemons being unaware of Meguerian and Kruszewski's misrepresentations regarding the size of her compensation until the respective qui tam settlement proceeds were allocated in July 2019. Compl., ¶¶ 2, 144, 217. Because it is not clear the claim was untimely, the statute of limitations defense must be plead in an answer, not here.

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court is required "to accept as true all allegations in the [counterclaims] and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plau-

sibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678).

Federal Rule of Civil Procedure 9(b) requires that all averments of fraud, and the circumstances constituting fraud "be stated with particularity." Fed. R. Civ. P. 9(b). In the Third Circuit, courts should be sensitive to the application of Rule 9 before discovery is complete when the facts surrounding the fraud are within the defendant's knowledge. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). The Court will address each Count in turn.

Count I asserts a fraudulent inducement claim against both defendants. In their motions to dismiss, Defendants assert the "gist of the action" doctrine bars Lemons' fraud claims. Under Pennsylvania law, the gist of the action doctrine is designed to "preclude a plaintiff from recasting ordinary breach of contract claims into tort claims." *Hart v. Arnold*, 884 A.2d 316, 339 (Pa. Super. Ct. 2005). The Third Circuit has recognized that after *Bruno v. Erie Ins. Co.*,[2] the gist of the action doctrine "cannot be captured by any precisely worded test. Instead, [it calls] for a fact intensive judgment as to the true nature of a claim." *Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 386 (3d Cir. 2004); *see also Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 186 (3d Cir. 2015).

---

[2] As recognized by the Third Circuit, *Bruno v. Erie Ins. Co.*, did not explicitly overrule *eToll*, but notably did not rely on the *eToll* factors when it performed the "source of duty" inquiry. *See Dommel Properties LLC v. Jonestown Bank & Trust Co.*, 626 F. App'x 361, 366 (3d Cir. 2015) (regarding *Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014)).

Because the "gist of the action doctrine" requires a fact-intensive inquiry, several courts within the Third Circuit have stated that "[c]aution must be exercised in dismissing a tort action on a motion to dismiss because whether tort and contract claims are separate and distinct can be a factually intensive inquiry." *Haymond v. Lundy*, 2000 WL 804432 (E.D. Pa. June 22, 2000); *see also Hess v. Nationwide Life Ins. Co.*, 2015 WL 5472897, at *8 (W.D. Pa. Sept. 17, 2015); *AscellaHealth, LLC v. CRx Health Servs.*, LLC, 2015 WL 1573395, at *4 (E.D. Pa. Apr. 9, 2015). Without having all of the facts at such an early stage in the proceedings, the Court will not dismiss the fraud claims under the "gist of the action doctrine."

Turning to the elements of Count I, under Pennsylvania law the elements of fraudulent inducement include: "(1) a representation; (2) material to the transaction; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another to rely on the misrepresentation; (5) justifiable reliance on the misrepresentation; and (6) injury proximately caused by the reliance on the misrepresentation." *Porreco v. Porreco*, 811 A.2d 566, 570 (Pa. 2002). These are the same elements as a claim for common law fraud, but a fraudulent inducement claim also requires "an allegation that the misrepresentation at issue was made with specific intent to induce another to enter into a contract when the person had no duty to enter into the contract." *Goldstein v. Murland*, 2002 WL 1371747, at *1 (E.D. Pa. June 24, 2002) (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992)).

Count II asserts a fraudulent concealment claim against both defendants. Under Pennsylvania law, there are six elements of a fraudulent concealment claim: "(1) an omission; (2) the omission was material to the transaction at hand; (3) the omission was made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) the omission was made with

the intent of misleading another into relying on it; (5) the plaintiff justifiably relied on the omission; and (6) the resulting injury was proximately caused by the reliance." *Slippery Rock Area School District v. Tremco, Inc.*, 2016 WL 3198122, *8 (W.D. Pa. 2016) (citing *Gaines v. Krawcyzk*, 354 F.Supp. 2d 573, 587 (W.D. Pa. 2004) (citing *Gibbs v. Earnst*, 647 A.2d 882, 889 n.12 (Pa. Super. 1994)). However, mere silence does not constitute concealment sufficient for a finding of fraud if there is no duty to speak. *Wilson v. Donegal Mutual Insurance Co.*, 598 A.2d 1310 (Pa. Super. Ct. 1991).

For both Count I and Count II, Lemons failed to plead with sufficient specificity the "misrepresentations" and/or "omissions" in question.[3] The facts Lemons cites in her response (Compl., ¶¶ 20-30, 144-151) do not "support the inference that Kruszewski falsely led Lemons to believe that "well-compensated" for her contribution to the case would be a multi-million-dollar figure . . ."[4] *See* ECF 23, at p. 17.  In fact, the Complaint does not allege that Kruszewski even spoke to Lemons at all, or made any representations to her. Nor do the pled facts give rise to a

---

[3] Even under a more relaxed particularity requirement, the precise misrepresentations which were allegedly told to Lemons are not chiefly in the Defendants' control. If misrepresentations were made to Lemons, she should plead what those misrepresentations were with particularity.

[4] The first cited portion of the Complaint merely establishes Kruszewski's status as the first relator to file, Meguerian's prior representation of Kruszewski, Meguerian's qui tam practice, and Meguerian's alleged representation of Kruszewski in a qui tam action against RB. The latter cited portion refers to the *after the fact* distribution of the global settlement among the relators, and states that Lemons wanted Kruszewski "to make good on his promises and representations that had induced Lemons to file the Lemons Action." Compl., ¶¶ 147-149. It does not state specifically what those promises and representations are. These assertions are not sufficient.

duty that would require Kruszewski to affirmatively reach out to Lemons.[5] Accordingly, Counts I and II are dismissed with leave to amend with regard to Kruszewski.

With regard to Meguerian, Lemons alleges "Meguerian promised and assured Lemons that they would well-compensate her for the information that she could provide to them," (Compl., ¶ 163) and "assured Lemons on multiple occasions that she would receive substantial compensation through the Lemons action." Compl., ¶ 104. Here, as with Kruzeswki, the facts pled do not support the inference that Meguerian falsely led Lemons to believe she would receive a *multi-million dollar* figure, nor that Meguerian's misrepresentations or omissions fraudulently induced her to file her qui tam action. It is unclear what these representations were, or when they occurred. Lemons has failed to plead fraudulent inducement and fraudulent concealment with sufficient particularity. Counts I and II will be dismissed with leave to amend the deficiencies identified here.

Count III asserts a negligent misrepresentation claim against both Defendants. Under Pennsylvania law, "[n]egligent misrepresentation requires proof of: (1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999). As discussed above, Lemons failed to plead with sufficient specificity a material misrep-

---

[5] "To make out their claim of intentional or negligent misrepresentation by concealment of a material fact, Plaintiffs must show that Defendants had a fiduciary duty to disclose the fact." *Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 725 (E.D. Pa. 2014). It is unclear from the complaint how Kruszewski would owe a special duty to Lemons as a matter of law, especially when he appears never to have communicated with Lemons. Furthermore, as Defendants argue, it is unclear from the Complaint how or why Kruszewski revealed the existence of other qui tam cases which were *filed under seal. See* Compl. ¶¶ 33-39.

resentation by either Kruszewski or Meguerian. Additionally, the Complaint fails to plead facts sufficient to show Kruszewski had a fiduciary duty to Lemons.[6] As a result, Count III is dismissed with leave to amend these claims as to both Kruszewski and Meguerian.

Count IV asserts a breach of fiduciary duty claim against Meguerian. Under Pennsylvania law, a Plaintiff must show (1) a duty owed, (2) a breach of said duty, and (3) an injury causally related to said breach. *See Gilmour v. Bohmueller*, No. 04-2535, 2005 WL 241181, at *10 (E.D. Pa. Jan. 27, 2005). Of course, between an attorney and their client, the fiduciary duty requires "undivided loyalty and prohibits the attorney from engaging in conflicts of interest." *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992).

Lemons' Complaint states she "reasonably believed that the attorney-client relationship between her and Meguerian was formed as of that email" and that "Meguerian disclosed he could not represent her in the Lemons Action due to a conflict of interest" but that nonetheless, an "attorney-client relationship existed between Lemons and Meguerian." Compl., ¶¶ 79, 97, 203-204. Lemons also alleges that the sharing of information was "to her detriment" and thus there was a harm. Compl., ¶¶ 205-208. These statements are conclusory. Lemons' Complaint does not articulate what the injury incurred was, nor does it sufficiently plead the foundation of an attorney-client relationship in the matter in question. As a result, Count IV is dismissed with leave to amend.

Count V asserts a breach of contract claim against Kruszweski. Under Pennsylvania law, a breach of contract claim has three elements: (1) the existence of a contract and its essential

---

[6] *See Supra*, Note 5 regarding Kruszewski.

terms, (2) a breach of a duty or obligation under the contract, and (3) harm resulting from the breach. *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

In the Complaint, Lemons alleges "she and Kruszewski entered into an unwritten contract in or around early 2014 by which Lemons agreed to provide evidence and make a claim in exchange for compensation when the qui tam action resolved." Comp. ¶¶ 104, 211. The Complaint asserts the existence of the "unwritten contract" without any explanation as to its origin. Furthermore, the Complaint does not allege Lemons was promised compensation *from Kruszewski* directly instead of from the *action* itself—and Lemons did in fact receive compensation (of an undisclosed amount) from the action. As a result, Count V is dismissed with leave to amend.

In Count VI, Lemons asserts an unjust enrichment claim against Kruzewski. There are three elements: "(1) benefits conferred on a defendant by a plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment for value." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008).

Here, Lemons' involvement may have increased the overall value of the settlement, and in turn increased Kruszewski's recovery (as the first relator). Nonetheless, even *if* that was a sufficient "benefit" conferred on Kruszewski (and not on the government) to satisfy the first prong, the Complaint does not allege facts sufficient to infer that *equity* requires compensation to Lemons *from Kruszewski* himself *beyond* the compensation Lemons already received from the action. As a result, Count VI will be dismissed with leave to amend.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.