IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA LEMONS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 21-1737 |
| | : | |
| GAREN MEGUERIAN, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                 **October 11, 2022**

In this action, Plaintiff Christina Lemons asserts claims of intentional and negligent misrepresentation, fraudulent concealment, breach of contract, breach of fiduciary duty, and unjust enrichment against Defendants Garen Meguerian, Esq. and Dr. Stefan P. Kruszewski, MD. This Court granted Defendants' first motions to dismiss for failure to state a claim with leave to amend. Lemons filed an Amended Complaint, which Defendants again move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Amended Complaint fails to cure the defects identified in this Court's previous Order, Defendants' motions will be granted and Lemons' case dismissed.

**FACTS**

The facts in this case are set out fully in this Court's Memorandum and Order of April 29, 2022, and are incorporated by reference herein. By way of short summary, this is a breach of contract and fraud action related to the outcome of a whistleblower lawsuit. Represented by attorney Garen Meguerian, Dr. Stefan Kruszewski filed a qui tam action in 2020 claiming Reckitt Benckiser Pharmaceuticals ("RB") falsely advertised the medication Suboxone.[1] Am. Compl. ¶¶

---

[1] The action was brought against Reckitt Benckiser Group, PLC, Reckitt Benckiser North American, Inc., Reckitt Benckiser Pharmaceuticals Solutions, Inc., and Reckitt Benckiser Pharmaceuticals, Inc. Am. Compl. ¶ 1.

24, 34. Four years later, Lemons met Meguerian, who encouraged her to file her own False Claims Act action regarding the same behavior by RB. *Id.* ¶ 51. In 2019, the qui tam suit settled for approximately $700 million. *Id.* ¶ 2. While Kruszewski likely received in excess of $40 million, Lemons was paid a "relatively paltry sum." *Id.* ¶¶ 277-78.

Lemons alleges Defendants made intentional and negligent misrepresentations about Lemons' potential recovery, and fraudulently concealed information regarding the number of prior relators in the suit against RB. She claims Defendants did so in order to induce her to file a claim, as she had important information to benefit the qui tam action, thus increasing Defendants' likelihood of success. Lemons further claims Kruszewski breached an unwritten contract and was unjustly enriched by her actions, and Meguerian breached a fiduciary duty owed to her.

The Court granted Defendants' first motions to dismiss for failure to state a claim with leave to amend. Lemons thereafter filed an Amended Complaint, which mostly reiterates her initial claims, while adding a limited number of new facts.

In terms of her injuries, Lemons adds an allegation that the "substantial compensation" she was promised by Meguerian would be "sufficient money to change her life," in the order of millions of dollars. Am. Compl. ¶ 117.

The Amended Complaint also adds facts about the alleged attorney-client relationship between Lemons and Meguerian. Lemons alleges this relationship arose after January 2014 email where Meguerian acknowledged their "attorney-client privilege," and continued through conversations about her potential qui tam claim until December 2014. *Id.* ¶¶ 91-94, 96-97, 100-102. Lemons further adds that, upon information and belief, Meguerian continuously shared the information he received from her with Kruszewski, which was a breach of his fiduciary duty as her attorney. *Id.* ¶¶ 111, 119. She alleges that, as a result of Meguerian's breach, she was not only

put in an inferior position to recover from the qui tam action, but was also rendered "unemployable because of the stigma associated with the filing of a whistleblower claim against a former employer." *Id.* ¶ 259.

The most substantive change made in the Amended Complaint goes to Lemons' claim for breach of contract against Kruszewski. To remedy the Court's finding that her initial Complaint did not allege she was "promised compensation *from Kruszewski* directly instead of from the *action itself*," Mem. 13, ECF No. 29, Lemons now alleges the existence of a second unwritten contract. Am. Compl. ¶ 170. This new alleged contract involved an agreement whereby Lemons promised not to disclose Kruszewski's actions in recruiting her to the qui tam suit, in exchange for Kruszewski's promise to pay Lemons "millions of dollars . . . directly from Kruszewski's share of the recovery." *Id.*

Defendants again move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). This Court must "accept as true all allegations in the complaint and all reasonable inferences that can

be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).

## DISCUSSION

Taking all facts in the Amended Complaint as true and deciding all inferences in her favor, Lemons fails to plausibly allege that Defendants' actions resulted in her claimed injuries. Further, her claims of breach of contract and unjust enrichment fail because she does not allege sufficient facts regarding the existence and nature of the alleged unwritten agreements. Accordingly, both Defendants' motions to dismiss will be granted in full.

Count I, which asserts an intentional misrepresentation claim against both Defendants does not meet the required plausibility standard. Under Pennsylvania law, the elements of this claim are: "(1) a representation; (2) material to the transaction; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another to rely on the misrepresentation; (5) justifiable reliance on the misrepresentation; and (6) injury proximately caused by the reliance on the misrepresentation." *Porreco v. Porreco*, 811 A.2d 566, 570 (Pa. 2002). Lemons alleges Defendants misrepresented her likelihood of success and potential size of recovery in order to induce her to file a qui tam claim. Am. Compl. ¶ 117.

Defendants offer four arguments as to why Count I should fail: (1) Lemons failed to allege sufficiently specific facts regarding any representations made by either Meguerian or Kruszewski; (2) any representation by Meguerian to Lemons was merely an opinion about Lemons' potential recovery if her qui tam action was successful, rather than an affirmative representation; (3) the promise of future conduct cannot be a basis for a fraud claim; and (4) it was unreasonable for Lemons to rely on any supposed misrepresentations. The reason why Lemons has not made out a claim for intentional misrepresentation, however, lies instead in the causation requirement. While

Defendants raise this issue in terms of Count III, negligent misrepresentation, it applies equally to the intentional tort.

Lemons claims two harms: a lower recovery amount than anticipated and being "forever stigmatized and unemployable." Am. Compl. ¶ 208. As to the first injury, Lemons has failed to show any causal link between Defendants' alleged breach—fraudulently inducing her to file a qui tam claim—and her lower-than-anticipated recovery. As Meguerian notes, he had no hand in the intervening relators filing their actions, which was the cause of Lemons' status as last in the pecking order. Meguerian Mem. Sup. Mot. Dismiss 15, ECF No. 34-2. Further, if Meguerian had not encouraged her to file her claim, Lemons would not have received anything from this whistleblowing action. Lemons has not shown that Meguerian's "failure to act solely for the plaintiff's benefit was a real factor in bringing about plaintiff's injuries." *Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc.*, 00-cv-3683, 2001 WL 856946, at *9 (E.D. Pa. July 26, 2001).

Lemons' second alleged injury—"industry-wide stigma" and "permanent unemployability"—is not well-pled. Am. Compl. ¶¶ 210, 214. The Amended Complaint includes no facts about her attempts to obtain employment, nor the reasons for her failure. Losing one job is not evidence of a "bar to future employment." *Id.* ¶ 215. That her unemployability is a result of her whistleblowing activities is merely possible, rather than plausible. *See Twombly*, 550 U.S. at 1966 (distinguishing allegations that plausibly suggest an entitlement to relief from allegations that are merely "consistent with" such entitlement). Because Lemons' Amended Complaint fails to allege a plausible causal connection between Defendants' actions and her well-pled injuries, both Defendants' motions to dismiss Count I will be granted.

In Count II, Lemons alleges Defendants fraudulently concealed the fact that there were several other relators besides Kruszewski. Am. Compl. ¶ 223. Because this claim does not meet

the plausibility standard, it will be dismissed as to both Defendants. Fraudulent concealment requires:

> (1) an omission; (2) the omission was material to the transaction at hand; (3) the omission was made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) the omission was made with the intent of misleading another into relying on it; (5) the plaintiff justifiably relied on the omission; and (6) the resulting injury was proximately caused by the reliance.

*Slippery Rock Area Sch. Dist. v. Tremco, Inc.*, No. 15-cv-1020, 2016 WL 3198122, at *8 (W.D. Pa. June 9, 2016). "An omission is actionable as fraud," however, "only where there is an independent duty to disclose the omitted information." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 612 (3d Cir. 1995).

The Amended Complaint alleges Meguerian had a fiduciary duty to tell Lemons about the other relators' claims because of their attorney-client relationship. Am. Compl. ¶ 232. Lemons also alleges Kruszewski had a duty to disclose this information because he was "in the process of entering into an unwritten contract" with Lemons, which created a duty of good faith and fair dealing. *Id.* ¶¶ 233-34. Regardless of the legal accuracy of these allegations, Lemons' claim must fail because a defendant cannot be duty-bound to disclose confidential information that is protected by law. *See Office of the Budget v. Campbell*, 25 A.3d 1318, 1319-20 (Pa. Commw. Ct. 2011) (holding a budget office could not be compelled to release redacted W-2 forms of office employees under Pennsylvania's "Right to Know Law" because federal tax law prohibits disclosure of these forms). The prior qui tam actions were under seal at the time Lemons complains of nondisclosure. *See* 31 U.S.C. § 3730. There can be no liability arising from Defendants' failure to disclose legally non-disclosable information, so Count II will be dismissed as to both Meguerian and Kruszewski.

Count III of Lemons' Amended Complaint contains claims against Meguerian and Kruszewski for negligent misrepresentation, both of which will be dismissed. Under Pennsylvania

law, "[n]egligent misrepresentation requires proof of: (1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999). These elements are nearly identical to those of intentional misrepresentation, with the added requirement that, like in all negligence cases, the defendant owe a duty to the plaintiff. *Id.* As the Amended Complaint fails to plausibly allege a causal connection between Defendants' misrepresentations and Lemons' ultimate injuries, as explained above, Lemons' claim for negligent misrepresentation also must fail. *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009) ("[P]roximate cause is an essential element of . . . negligent misrepresentation."). Count III will therefore be dismissed as to both Defendants.

Count IV asserts a claim of breach of fiduciary duty against Meguerian. Under Pennsylvania law, a Plaintiff must show (1) a duty owed, (2) a breach of said duty, and (3) an injury causally related to said breach. *See McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 626-27 (E.D. Pa. 1998). Lemons claims Meguerian was serving as her attorney at the time he made the alleged misrepresentations, giving rise to a fiduciary duty. Am. Compl. ¶ 94. According to Lemons, Meguerian breached this duty by misrepresenting material facts, abusing their confidential relationship, and failing to act in her best interests, all in contravention of his duty to not engage in conduct involving "dishonesty, fraud, deceit or misrepresentation." *Office of Disciplinary Counsel v. Holston*, 533 Pa. 78, 81 (Pa. 1993) (citing Pennsylvania's Rules of Professional Conduct).

As is the case with her misrepresentation claims, however, Lemons fails to allege sufficient facts regarding the causation element of breach of fiduciary duty. It is unclear how Meguerian's

alleged breach led to Lemons' injuries. Lemons cannot argue that Meguerian's actions, which induced her to file a qui tam claim, led to her lower-than-expected recovery from the suit, as without it, she never would have been a part of the case in the first place. Because the Amended Complaint fails to plausibly allege a causal nexus between Meguerian's alleged breach and Lemons' harms, Meguerian's motion to dismiss Count IV will be granted.

Finally, Lemons asserts two claims against Kruszewski only in Counts V and VI: breach of contract and unjust enrichment, of which both will be dismissed.

An agreement constitutes an enforceable oral contract when the parties intend it to be binding and the essential terms are certain enough to provide the basis for ascertaining an appropriate remedy. Restatement (Second) of Contracts § 33 cmt. a. "If the essential terms of the agreement are so uncertain that there is no basis for determining whether the agreement has been kept or broken, there is not an enforceable contract." *Linnet v. Hitchcock*, 471 A.2d 537, 540 (Pa. Super. Ct. 1984). This uncertainty plagues Lemons' claim. She alleges she and Kruzewski were parties to two unwritten contracts. The first was an agreement whereby Lemons would provide evidence and file a qui tam action, and in return, Kruszewski would support her request to join the relators' sharing agreement. Am. Compl. ¶ 263. The second contract, newly mentioned in her Amended Complaint, was allegedly an agreement where Kruszewski would give Lemons a share of his personal recovery in exchange for Lemons' silence about Kruszewski's role in recruiting her to the whistleblowing action. *Id*. ¶ 266. It is unclear what kind of "seat at the bargaining table" Kruszewski allegedly promised Lemons in the first agreement, or how much "life-changing money" she was pledged in the second agreement. *Id.* ¶ 185, 243. Without this essential information, there is no basis for ascertaining whether the alleged contracts were broken. Because Lemons fails to allege sufficient facts to show the existence of binding oral contracts, Count V

will be dismissed.

Unjust enrichment is an equitable remedy available when one person benefits at the expense of another. It has three elements: "(1) benefits conferred on a defendant by a plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008). Unjust enrichment is not available to a plaintiff who acts "primarily for its own benefit." *Axis Specialty Ins. Co. v. Brickman Grp. LTD*, *LLC*, 756 F. Supp. 2d 644, 656 (E.D. Pa. 2010). This Court's original Order dismissed this claim because the Complaint did not "allege facts sufficient to infer that *equity* requires compensation." Mem. 13, ECF No. 29. Lemons' second attempt does not remedy this error. She states she filed her qui tam action in response to Meguerian's alleged representations about the "life-changing" amount of recovery she could anticipate. Am. Compl. ¶ 220. This is a clear admission that her goal in filing the action—and thereby conferring alleged benefit on Kruszewski—was personal profit. Although Kruszewski did plausibly benefit from her actions, Lemons fails to allege she would not have chosen to file had this not been the case. "The fact that we derive advantage from the efforts and expenditures of others is not 'unjust enrichment' but one of the advantages of civilization." Restatement (Third) of Restitution and Unjust Enrichment § 2 cmt. b. Further, to be subject to a claim of unjust enrichment, "the benefit conferred must be something in which the claimant has a legally protected interest," which is not the case with Lemons' alleged losses. *Id*. Therefore, Count VI will be dismissed.

For the reasons stated above, Defendants' motions to dismiss will be granted. This Court will grant Lemons one final leave to amend.

An appropriate Order follows.

BY THE COURT:


 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.